UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEAN CUTTING, *et al.,*<br><br>Defendants. | Case No. 14-cr-00139-SI-1; Case No. 17-cr-00139 SI<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE SURPLUSAGE; DENYING DEFENDANT MELLAND'S MOTION FOR SEVERANCE; GRANTING DEFENDANT LONICH'S MOTION FOR ORDER RE: TIME ESTIMATES**<br><br>Re: Dkt. Nos. 414-417 in 14-cr-139 SI;<br>Dkt. Nos. 18, 19, 21 in 17-cr-139 SI |

On August 7, 2017, the Court heard argument on (1) defendant Lonich's motion to dismiss counts 1 and 10; (2) defendant Melland's motion to strike surplusage and to dismiss counts 1, 6, 10, 17, 18 and 21; (3) defendant Melland's motion for severance; and (4) defendant Lonich's motion for time estimates and summary proffers.[1]  For the reasons set forth below, the Court GRANTS defendant Lonich's motion for time estimates and summary proffers and DENIES the remaining motions.

**DISCUSSION**

**I.  Defendant Lonich's motion to dismiss counts one and ten**

Defendant Lonich moves for an order dismissing Count 1 of the indictment returned in

---

[1] Defendant Cutting has joined in all of the motions except defendant Melland's motion for severance.

Case No. 17 Cr. 139 SI ("Count 1") and Count 10 of the second superseding indictment returned in Case No. 14 Cr. 139 SI ("Count 10") because the charges are multiplicitous and violate his due process and double jeopardy rights. Count 1 alleges a conspiracy to commit bank fraud and falsify bank entries and reports in violation of 18 U.S.C. § 371 (the substantive statutory offenses are 18 U.S.C. § 1344 and 18 U.S.C. § 1005), and Count 10 alleges a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Defendant argues that both counts allege that the defendants conspired to obtain funding for 101 Houseco by misrepresenting Jim House's role in 101 Houseco. Defendant argues that because both counts allege the same criminal agreement, the government has impermissibly charged the same offense in two conspiracy counts.

Multiplicity is the charging of a single offense in more than one count. *United States v. UCO Oil Co*., 546 F.2d 833, 835 (9th Cir. 1976). The Ninth Circuit has adopted a "factor analysis to determine whether two conspiracy counts under one statute[2] charge the same offense. . . . We compare( ) the differences in the periods of time covered by the alleged conspiracies, the places where the conspiracies were alleged to occur, the persons charged as co-conspirators, the overt acts alleged to have been committed, and the statutes alleged to have been violated." *United States v. Bendis*, 681 F.2d 561, 565 (9th Cir. 1981).[3] It is defendant's burden to show that the two conspiracies are the same. *United States v. Guzman*, 852 F.2d 1117, 1119 (9th Cir. 1988).

Defendant's arguments are not without some force. The indictments allege different, but overlapping time periods, with Count 1 alleging a conspiracy between 2005-2010, and Count 10 alleging a conspiracy between 2009-2012. The places where the conspiracies were alleged to occur are largely the same, as are the persons charged as co-conspirators. However, the statutes

---

[2] Here, Counts 1 and 10 are charged under different statutes. In any event, the Court addresses that fact *infra*.

[3] The government does not address the test set forth in *Bendis*, and instead relies on *United States v. Brooks*, 610 F.3d 1186 (9th Cir. 2010). In *Brooks*, the Ninth Circuit held that an indictment charging a defendant with two counts of child sex trafficking and two counts of interstate transportation of a minor for prostitution was not multiplicitous because "each [statute] require[s] proof of a fact that the other does not." *Id*. at 1194. Defendant asserts that *Brooks* does not apply because *Brooks* did not address two conspiracy counts. The Court finds it need not resolve whether *Brooks* or *Bendis* governs because even under *Bendis*, the Court cannot conclude on this record that the counts are multiplicitous.

2

alleged to have been violated are different. Count 1 alleges defendants engaged in bank fraud and falsified bank records in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 1005 by obtaining loans from SVB in excess of SVB's legal lending limits, using straw purchasers for numerous loans, including the 101 Houseco loan. Count 10 alleges defendants engaged in wire fraud in violation of 18 U.S.C. § 1349 by using the proceeds of the 101 Houseco loan to successfully bid on Madjlessi's defaulted IndyMac loan through DebtX, an agent of the FDIC, and making numerous misrepresentations to different financial institutions in order to obtain Freddie Mac refinancing and to secure loans. Some of the alleged overt acts − those relating to the 101 Houseco loan − are alleged under both charged conspiracies.

However, on the present record the Court cannot conclude that Counts 1 and 10 charge the same conspiracy. In the cases relied upon by defendants, the courts reviewed, at least in part, evidence that had been admitted at trial to determine whether separately charged conspiracies were distinct or the same. *See Bendis*, 681 F.2d at 568 (comparing trial record of the defendant's prior conviction in Kansas against government's proffer of trial evidence in Hawaii indictment and concluding that separate conspiracies were charged); *see also Braverman v. United States*, 317 U.S. 49, 52-53 (1942) (reversing convictions on seven conspiracy counts charging violations of separate Internal Revenue codes where government conceded that evidence at trial proved defendants entered into a single agreement to commit multiple crimes); *United States v. Stoddard*, 111 F.3d 1450, 1454-57 (9th Cir. 1997) (holding the defendant's prior acquittal on charges alleging a drug conspiracy between 1989-1990 barred the government, on double jeopardy grounds, from subsequently charging the defendant in a broader drug conspiracy between 1985 and 1995 because the evidence showed "that there was only one agreement between the conspirators"). Here, the Court cannot determine solely based upon the allegations of the indictments that Counts 1 and 10 charge the same conspiracy. Accordingly, the Court DENIES defendant's motion to dismiss these counts without prejudice to renewal upon an evidentiary record.

///

## II. Defendant Melland's motion to strike surplusage and to dismiss

Defendant Melland raises a similar challenge to Counts 1 and 10, and additionally contends that the following charges are multiplicitous: Count 6 (conspiracy to make false statements to the FDIC in violation of 18 U.S.C. § 371; the substantive statutory offense is 18 U.S.C. § 1007); Count 17 (conspiracy to make false statements to a financial institution in violation of 18 U.S.C. § 371; the substantive statutory offense is 18 U.S.C. § 1014); Count 18 (conspiracy to commit money laundering violation of 18 U.S.C. § 1957); and Count 19 (conspiracy to misapply bank funds in violation of 18 U.S.C. § 371; the substantive statutory offense is 18 U.S.C. § 656). For the same reasons as stated above, the Court DENIES defendant's motion to dismiss without prejudice to renewal upon an evidentiary record.

Defendant Melland also moves to strike the "introductory allegations" sections of both indictments pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure. Melland contends that these allegations are "surplusage" and that "the history of SVB, its final demise and reasons for failure" are "not . . . a concise statement of the offense." Dkt. No. 416 at 15. The government responds that allegations that defendants caused SVB to fail and sustain losses of approximately $20 million are relevant to, *inter alia*, the materiality of the schemes to defraud alleged in the bank fraud and wire fraud counts.

"The purpose of Rule 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir. 1983). The Court agrees with the government that Melland has not identified any prejudicial or inflammatory allegations that should be stricken, and that the allegations regarding SVB in the introductory sections of the indictments are relevant to the charged bank and wire fraud.[4]

## III. Defendant Melland's motion for severance of defendants for trial

"In an abundance of caution," defendant Melland requests a severance due to unspecified "problems which may present themselves at trial." Dkt. No. 417 at 14. Melland asserts that "[t]he

---
[4] Further, the Court does not intend to provide the indictments to the jury.

4

existence of multiple conspiracies in the Indictment and Second Superseding Indictment, and the resulting problems regarding the admissibility of evidence against the various defendants in this case, will deny MELLAND his right to a fair trial." *Id*. at 15. Melland also asserts that he will be prejudiced by a joint trial because of "mutually antagonistic defenses and trial tactics by co-defendants," although he does not specify what those defenses or trial tactics are. *Id*.

The decision whether to sever pursuant to Rule 14 is committed to the discretion of the Court. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). Severance may be appropriate to avoid prejudice to a defendant; however, Rule 14 "sets a high standard for a showing of prejudice." *Id*. at 846; *see also United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987). The Ninth Circuit has stated,

> Inquiry into the prejudicial effect of a joint trial involves consideration of several factors, including: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004).

Under Federal Rule of Criminal Procedure 8(b), "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." When defendants are indicted together, the federal system evinces a preference for joint trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Lane*, 474 U.S. 438, 449 (1986) (recognizing that joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial") (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). Only where joinder would create "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" must the Court grant severance. *Zafiro*, 506 U.S. at 539.

5

The Court finds that Melland has failed to demonstrate that he is entitled to severance. As the government notes, Melland's motion does not offer any factual basis for severance, and thus he has not shown with any particularity that he will be prejudiced by a joint trial. Melland is named in 36 of the 37 counts, many of which allege conspiracies. Joint trials are particularly appropriate in conspiracy cases, where the government must introduce evidence of co-conspirators' acts simply to prove up the existence of a conspiracy. *Fernandez*, 388 F.3d at 1242. Further, the Court notes that "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538. Instead, "[t]o be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). Finally, the jury's ability to effectively compartmentalize evidence can be aided by the Court's use of limiting instructions. *Fernandez,* 388 F.3d at 1243. Indeed, "careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial." *Id.*

Accordingly, the Court DENIES defendant Melland's motion for severance.

### IV. Defendant Lonich's motion for order directing the government to file time estimates and summary proffers

Pursuant to the Fifth Amendment to the United States Constitution, the Federal Rules of Criminal Procedure, and *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc), defendant Lonich moves for an order directing the United States to file time estimates and written offers of proof for its trial witnesses contemporaneously with the filing of its exhibit and witness lists. Defendant asserts that based upon this history of the government's conduct in this litigation, the breadth of the charges contained in the two indictments, and the massive amount of discovery, an order requiring the government to file time estimates and written offers of proof will help to minimize the chance of unfair surprise and facilitate an efficient trial.

The government opposes the motion, arguing that the Court has already taken steps to

assist the defendants in preparing for trial by requiring the early production of *Jencks* and other materials and the early filing of witness and exhibit lists on August 22, 2017. The government argues that the additional relief requested by Lonich is unprecedented and unnecessary, and that Lonich's criticisms of the government's recent multi-million document production from the FDIC-R "seems unfair" since defendants requested that discovery.[5]

The Ninth Circuit has explained that, in order to effectuate the speedy and orderly administration of justice, "a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *W.R. Grace*, 526 F.3d at 508-09. In *Grace*, the Ninth Circuit upheld the district court's order that required the Government to disclose a final witness list by a certain deadline, and limiting its witnesses to those on the list. It relied on the "well established principle that district courts have inherent power to control their dockets" and the fact that "judges exercise substantial discretion over what happens *inside* the courtroom." *Id.* at 509 (quotations and citations omitted). The Ninth Circuit concluded that "all federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *Id.* (quotations and citations omitted).

The Court finds that under the particular circumstances of this case, defendant has shown that the requested relief is appropriate. The Court recognizes that requiring the government to provide time estimates and written offers of proof for its trial witnesses will impose an extra burden on the government, and the Court does not grant defendant's motion lightly. However, as the docket and the many orders from the Court reflect, this case has been especially complicated and protracted, due in no small part to the manner in which the government has prosecuted this matter. Further, given the millions of pages of electronic and paper discovery in this case, as well

---

[5] As Lonich notes in his reply, although his co-defendants requested that the government produce the FDIC-R documents, Lonich never requested those documents and in fact objected to that discovery being produced to him. *See* Dkt. Nos. 265, 276.

as the scope of the allegations in the 37 counts (which allege numerous conspiracies, some dating back to 2005) the Court finds it is in the interest of judicial efficiency to require the government to provide time estimates and written offers of proof. As discussed at the hearing, the written offers of proof will consist of short summaries and identification of all 302s and MOIs.

Accordingly, the Court GRANTS defendant Lonich's motion and directs the United States to file time estimates and written offers of proof for its trial witnesses contemporaneously with the August 22, 2017 filing of its exhibit and witness lists.

## CONCLUSION

For the reasons set forth above, the Court DENIES defendant Lonich's motion to dismiss counts 1 and 10; DENIES defendant Melland's motion to strike surplusage and to dismiss counts 1, 6, 10, 17, 18 and 21; DENIES defendant Melland's motion for severance; and GRANTS defendant Lonich's motion for time estimates and summary proffers.

**IT IS SO ORDERED**.

Dated: August 8, 2017

SUSAN ILLSTON
United States District Judge